UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

BEAU BRENDLER,

                     Plaintiff,

- against -

STORYFUL AMERICAS, LLC,

                     Defendants.

------------------------------------------------------------------------X

Case No. 7:20-cv-00592

Index No.

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff BEAU BRENDLER, by his attorneys The Myers Law Group, A.P.C., for his complaint respectfully alleges:

## NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately resulting from the Defendants' conduct, that violated Plaintiff's rights as guaranteed him by reason of Americans with Disabilities Act (ADA), the Family Medical Leave Act (FMLA) and the New York City Human Rights Law (HRL).

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331 (federal question) and 1367 (supplemental jurisdiction).

3. On or about September 19, 2019, Plaintiff duly and timely filed with the United States Equal Employment Opportunity Commission (EEOC) a Charge of Discrimination on the basis of disability, age and retaliation (Charge No. 520-2019-06174). On October 28, 2019, the EEOC mailed Plaintiff a Notice of Right to Sue (Exhibit 1).

## THE PARTIES

4. Plaintiff Beau Brendler is a male U.S. citizen of legal age who resides within this judicial district. At all times relevant to this Complaint, Plaintiff was an employee of Defendant

Storyful Americas, LLC, until his termination on December 11, 2018. Plaintiff filed a Chapter 13 bankruptcy proceeding on September 16, 2019.

5. Upon information and belief, at all times relevant hereto, Defendant Storyful Americas, LLC (hereafter, "Storyful") has been a Delaware Limited Liability Corporation which does business in the State of New York at 1211 Avenue of the Americas, New York, NY 10036. Defendant Storyful is a covered employer under Title VII, 42 U.S.C. § 2000e.

6. At all relevant times, Storyful employed more than 15 people.

7. At all relevant times, Storyful employed at least 50 people within 75 miles of Plaintiff's worksite.

## THE FACTS

8. Storyful is a wire service that draws content from social media. Mr. Brendler's original job title was Senior Journalist ad he was later promoted t Senior Journalist and Copy Editor. He spent his workdays searching for unedited footage from war zones, terrorist attacks, other violent events and natural disasters video on Facebook, Instagram, Twitter, YouTube and similar sites. Storyful would cull the footage from social media sites, verify its authenticity, and then provide it to news organizations. Much of the video footage that Mr. Brendler was directed to seek out was so violent or gruesome that it violated the terms of service of the social media platforms on which it was posted. As a result, there was substantial pressure to obtain the footage, and all the information needed to authenticate it, before it was taken down.

9. At all relevant times, Mr. Brendler performed the duties of his position satisfactorily or better. In his last performance review, he was rated as Excellent by his manager.

10. From January 30 to February 5, 2018, Mr. Brendler took medical leave from his job to try to relieve mental stress that he was experiencing. He spoke with his doctor during this

2

period provided his employer with a letter from her excusing him from work for those days. He notified his supervisor, Alan O'Riordan, whose office was in Ireland, that he was out for medical reasons. The company encouraged its employees to report absences of greater than four days to their insurer, MetLife, and take the time as FMLA leave. Mr. Brendler contacted MetLife as expected and told them he was under medical care and needed to take time off.

11. Mr. Brendler returned to work on the schedule contained in the letter from his doctor, in early February 2018. On February 14, 2018, the mass shooting at Marjorie Stoneman Douglas High School in Parkland, FL took place, which Storyful covered extensively. Mr. Brendler was exposed to large amounts of raw footage from the incident. Morale in the newsroom was very low, and counselors were brought in by the company to help the staff deal with what they had seen and heard in the Parkland footage.

12. On April 7, 2018 there was a chemical weapons attack by the Syrian government in the City of Douma, Syria. Mr. Brendler reviewed significant amounts of footage from this horrific event. Two staff members on duty with Mr. Brendler that day both expressed reservations about looking at the footage, so Mr. Brendler took on the responsibility of attempting to verify the veracity of the videos. A few days later, Mr. Brendler began to experience anxiety, flashbacks, intrusive thoughts and dissociative behavior. He phoned his doctor, who said that she thought he was suffering from PTSD. On his doctor's advice, Mr. Brendler took a week off. He discussed with his superior Mandy Jenkins and Joyce Corrigan of Human Resources whether he should go on short-term disability, but ultimately took the time as sick days instead.

13. On August 9, 2018 Saudi Arabian air forces bombed a civilian school bus at a market in Dahyan, Yemen. Among the casualties were 40 children, many of whom were under

the age of ten. Storyful covered the story extensively. The footage was horrific and there was a lot of it to look at, process and verify. A day or two later Mr. Brendler began telling colleagues at work and others that he was having trouble dealing with what he had viewed in the Dahyan footage. Mr. Brendler began having a problem with sleepwalking. He would wake in the middle of the night to find himself standing in his shower, or outside of his house.

14. In mid-August 2018, Mr. Brendler's doctor again took him off work for mental health treatment. Mr. Brendler completed a 30-day intensive outpatient therapy program. He told Alan O'Riordan that he again needed to take a leave of absence for medical reasons. He informed MetLife of the absence as required by his employer. His absence was recorded by the company as FMLA leave and ended up being about seven weeks long. Mr. Brendler returned to work at the conclusion of the leave.

15. The day after Mr. Brendler returned to work, he was called into a meeting with Alan O'Riordan, his immediate supervisor, and Toby Bochan, who was a senior editor. He was told there was a restructuring going on and that his job title would change. The words "Copy Editor" were removed from his title, which would now be Senior Journalist, Standards. The matter was presented to Mr. Brendler as both a done deal and no big deal. However, it turned out Mr. Brendler was re-classified by the company in a way that constituted a demotion in work authority. Mr. Brendler's editing privileges were taken away and he was no longer allowed to attend Editorial meetings that he had previously attended. From that point forward, Mr. Brendler had to have someone sign off on his work before it was published, whereas previously Mr. Brendler had the authority to finally sign-off on published content himself. In addition, Mr. Brendler learned that Megan Holmgren had gone on maternity leave but was not replaced, and Storyful expected Mr. Brendler to pick up the slack left by her absence, thus increasing his

workload. Following this meeting, Mr. Brendler was reassigned to a new supervisor, Rob McDonagh, in New York.

16. On November 3, 2018 Mr. Brendler sent an email to Joyce Corrigan, who supervised Human Resources at Storyful in New York, with the subject line "Can we talk next week? I've been demoted after return from FMLA." Ms. Corrigan assured Mr. Brendler that the matter was being taken seriously. Eventually, she forwarded an email to Mr. Brendler in which she was told that Mr. Brendler's position changed as a result of a "title exercise" and was not a demotion. Ms. Corrigan then took a few days off and Mr. Brendler was unable to follow up with her.

17. On December 10, 2018, Storyful held its Christmas party in New York. Mr. Brendler attended and spent time with the new CEO and Mr. Brendler's new supervisor. It seemed to Mr. Brendler like things were leveling out for him at work. The next day, while Mr. Brendler was at the office, the company cut off all of his Internet access, and proceeded to terminate his employment via cell phone call.

18. Prior to being terminated, Mr. Brendler spoke to Joyce Corrigan of HR about the possibility of working from home one day per week to allow him to treat with his PTSD therapist. Ms. Corrigan informed Mr. Brendler that the new CEO was opposed to people working from home and she discouraged him from making the request. Mr. Brendler took Ms. Corrigan's advice.

19. In May of 2018 it was reported to Mr. Brendler that Joe Galvin, Storyful's news director in Ireland, had been verbally abusive to women employed in the New York and Dublin offices. Mr. Brendler reported that to HR, verbally and in writing. Mr. Brendler believes that retaliation for such report was an additional motivating factor in his termination.

20. As a direct and proximate result of foregoing acts, Plaintiff has suffered and continues to suffer damages including, but not limited to, economic damages, pain and suffering, humiliation, mental anguish and emotional distress.

## FIRST CAUSE OF ACTION

### Disability Discrimination in Violation of the Americans with Disabilities Act

Against Defendant Storyful Americas, LLC

21. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 20 as if fully set forth herein.

22. At all times relevant times, Plaintiff was a qualified individual with a disability who, with or without reasonable accommodation, could and did perform the essential functions of the position that he held with Defendant, and/or the position from which he was demoted from by Defendant.

23. Defendant was, at all relevant times, a covered entity under the Americans with Disabilities Act.

24. Defendant demoted and discharged Plaintiff due to his disability.

25. Plaintiff suffered economic and non-economic damages as a result of Defendant's discrimination against Plaintiff due to Plaintiff's disability.

## SECOND CAUSE OF ACTION

### Failure to Accommodate in Violation of the Americans with Disabilities Act

Against Defendant Storyful Americas, LLC

26. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25 as if fully set forth herein.

27. Plaintiff was a qualified individual with a disability, Defendant was aware of

Plaintiff's disability and record of disability, and Defendant regarded Plaintiff as disabled.

28. Plaintiff sought and was denied the reasonable accommodation of working from home one day per week to enable him to obtain mental health treatment for his disability with his PTSD therapist.

29. Such accommodation would not have caused Plaintiff's employer an undue hardship, considering, among other things, the nature of Plaintiff's job responsibilities and the size of Defendant's work force.

30. Plaintiff suffered economic and non-economic damages as a result of Defendant's failure to reasonably accommodate Plaintiff's known disability.

## THIRD CAUSE OF ACTION

### Interference Under the Family and Medical Leave Act

Against Defendant Storyful Americas, LLC

31. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 30 as if fully set forth herein.

32. Plaintiff engaged in the protected activity of taking leave under the Family and Medical Leave Act (FMLA) in January-February 2018, and again in August-September 2018, due to his own serious health condition, PTSD.

33. Plaintiff had been employed by Defendant for at least 12 months and had provided at least 1,250 hours of service to Defendant in such 12-month period immediately preceding the commencement of each period of leave.

34. Defendant employed at least 50 employees within 75 miles of Plaintiff's worksite.

35. Plaintiff properly sought and took leave under the FMLA.

36. Defendant interfered with Plaintiff's rights under the FMLA by denying Plaintiff

re-instatement to his original or an equivalent position, demoting him, reducing his pay, and ultimately discharging him from employment, as described above.

37. Plaintiff suffered economic and non-economic damages as a result of Defendant's interference with Plaintiff's rights under the FMLA.

## FOURTH CAUSE OF ACTION

### Retaliation Under the Family and Medical Leave Act

Against Defendant Storyful Americas, LLC

38. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 as if fully set forth herein.

39. Plaintiff engaged in the protected activity of taking leave under the Family and Medical Leave Act (FMLA) in January-February 2018, and again in August-September 2018, due to his own serious health condition, PTSD.

40. Plaintiff had been employed by Defendant for at least 12 months and had provided at least 1,250 hours of service to Defendant in such 12-month period immediately preceding the commencement of each period of leave.

41. Defendant employed at least 50 employees within 75 miles of Plaintiff's worksite.

42. Plaintiff properly sought and took leave under the FMLA.

43. Defendant retaliated against with Plaintiff for exercising his rights under the FMLA by denying Plaintiff re-instatement to his original or an equivalent position, demoting him, reducing his pay, and ultimately discharging him from employment, as described above.

44. Plaintiff suffered economic and non-economic damages as a result of Defendant's retaliation against Plaintiff's for exercising his rights under the FMLA.

///

## FIFTH CAUSE OF ACTION

**Retaliation Under Title VII, 42 U.S.C. § 2000e,** *et seq.*

Against Defendant Storyful Americas, LLC

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 44 as if fully set forth herein.

46. Plaintiff engaged in protected activity under Title VII by reporting to Defendant's Human Resources Department that Joe Galvin, Storyful's news director in Ireland, had been verbally abusive to women employed in the New York and Dublin offices.

47. Subsequent to such protected activity, Plaintiff was demoted, suffered a reduction in pay, and was ultimately discharged from his employment.

48. Plaintiff alleges that his protected activity in making a report to HR about Mr. Galvin's conduct in verbally abusing women in the New York office was an additional motivating factor in his discharge from his employment.

49. Plaintiff suffered economic and non-economic damages as a result of Defendant's retaliation against Plaintiff's for opposing discrimination and/or harassment on the basis of sex in violation of Title VII.

## SIXTH CAUSE OF ACTION

Disability Discrimination, Failure to Reasonably Accommodate Disability and Retaliation in

Violation of the New York City Human Rights Law

Title 8 of the Administrative Code of the City of New York, Sec. 8-107.

Against Defendant Storyful Americas, LLC

50. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 49 as if fully set forth herein.

51.     Defendant is a "covered entity" and an "employer" as defined by the New York City Human Rights Law (NYCHRL)

52.     NYCHRL provides that it is an unlawful discriminatory practice for an employer (or an employee or agent of an employer) to represent that any employment or position is not available when in fact it is available; to discharge an employee; or to discriminate against an employee in compensation or in terms, conditions or privileges of employment, because of the actual or perceived disability of such employee.

53.     The NYCHRL makes it unlawful to refuse to reasonably accommodate the known disability of an employee, or to retaliate or discriminate in any manner against any person because such person requested or received a reasonable accommodation for a disability.

54.     Defendant's conduct, as set forth above, at various times, constituted disability discrimination, failure to accommodate Plaintiff's known disability, retaliation for requesting and taking leave or permission to work from home one day per week as a reasonable accommodation of a known disability, all in violation of the violated the New York City Human Rights Law.

55.     Plaintiff suffered economic and non-economic damages as a result of Defendant's violation of the NYCHRL with respect to Plaintiff.

## SEVENTH CAUSE OF ACTION

Retaliation in Violation of the New York City Human Rights Law

Against Defendant Storyful Americas, LLC

56.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 55 as if fully set forth herein.

57.     The NYCHRL makes it unlawful to retaliate or discriminate in any manner against any person because such person has opposed any practice forbidden by the NYCHRL,

10

including but not limited to discrimination and harassment on the basis of sex.

58. Plaintiff engaged in protected activity under the NYCHRL Title VII by reporting to Defendant's Human Resources Department that Joe Galvin, Storyful's news director in Ireland, had been verbally abusive to women employed in the New York and Dublin offices.

59. Subsequent to such protected activity, Plaintiff was demoted, suffered a reduction in pay, and was ultimately discharged from his employment.

60. Plaintiff alleges that his protected activity in making a report to HR about Mr. Galvin's conduct in verbally abusing women in the New York office was an additional motivating factor in his discharge from his employment.

61. Plaintiff suffered economic and non-economic damages as a result of Defendant's retaliation against Plaintiff's for engaging in protected conduct under the NYCHRL.

## PRAYER FOR RELIEF

WHEREFORE a judgment is respectfully demanded:

a. Awarding Plaintiff back pay, front pay and all other such compensatory, general, special, economic and non-economic damages as the jury may determine;

b. Awarding Plaintiff such punitive damages as the jury may determine, on all such causes of action on which such damages are available;

c. Awarding Plaintiff reasonable attorneys' fees and costs of action; and

d. Granting such other and further relief as to the Court seems just and proper.

Dated: January 22, 2020  
Los Angeles, CA

Respectfully submitted,

THE MYERS LAW GROUP, A.P.C.

By: _____  
Robert M. Kitson (RK 8424)  
*Attorneys for Plaintiff*

9327 Fairway View Pl., Suite 100
Rancho Cucamonga, CA 91730
(909) 919-2027
rkitson@myerslawgroup.com

## DEMAND FOR JURY TRIAL

Plaintiff Beau Brendler hereby demands a jury trial on all causes of action and issues upon which trial by jury is available in this action.

Dated: January 22, 2020
Los Angeles, CA

Respectfully submitted,

**THE MYERS LAW GROUP, A.P.C.**

By: _____

Robert M. Kitson (RK 8424)
*Attorneys for Plaintiff*
9327 Fairway View Pl., Suite 100
Rancho Cucamonga, CA 91730
(909) 919-2027
rkitson@myerslawgroup.com